Reid M. ZEISING, Plaintiff,

v.

Richard A. KELLY, Charles S. Winslow, William J. Chrystal, James B. Carlson, and the World Financial Exchange, Inc., Defendants.

No. 99 CV 10542(RCC).

United States District Court, S.D. New York.

March 30, 2001.

338

Jamie M. Brickell, Pryor, Cashmen, Sherman & Flynn, L.L.P., New York City, for Plaintiff.

### Opinion and Order

CASEY, District Judge.

Plaintiff Reid M. Zeising ("Plaintiff") brought this action before the Court, alleging breach of contract, breach of fiduciary duty, *quantum meruit* and fraud against Wofex (misidentified in the complaint as the World Financial Exchange, Inc.), Richard A. Kelly, Charles S. Winslow and William J. Chrystal (collectively referred to herein as the "Wofex Defendants"), and alleging tortious interference with contract against James B. Carlson, a member of the law firm Mayer, Brown & Platt (the Wofex Defendants and Carlson collectively referred to herein as "Defendants"). Defendant Carlson brought a motion to dismiss Plaintiff's complaint as against him, arguing that: legal advice to a client cannot be the basis for a tortious interference claim from a third party; the complaint fails properly to allege causation; and the purported agreement is unenforceable under the Statute of Frauds. The Wofex Defendants brought a motion to dismiss Plaintiff's complaint based on the Statute of Frauds and insufficient pleading of a joint venture.

For the reasons stated below, Defendants' motions are GRANTED.

### *Federal Jurisdiction*

The case is properly in federal court pursuant to Title 28 of the United States Code, Section 1332, because this action involved citizens of different states and the

amount in controversy exceeds $75,000. Venue is proper in the Southern District of New York pursuant to Title 28 of the United States Code, Section 1391.

### Background

In accordance with the standard of review for a motion to dismiss, the Court assumes the following facts, set forth in Plaintiff's complaint, to be true. On August 15, 1999, Defendant Winslow informed Plaintiff of a business transaction he was contemplating with defendants Kelly and Chrystal. Plaintiff had a number of subsequent conversations with defendants Winslow and Kelly, about their idea for a financial exchange which would be made available in connection with electronic securities trading. They allegedly informed Plaintiff that they were looking for assistance in formulating a business plan, a financial model for such plan, and securing financing for the business plan. Plaintiff alleges that the Wofex Defendants requested that he assist them by formulating a financial and business plan for Wofex by calling upon his contacts in the financial industry to introduce them to Wofex, and by preparing and presenting the business plan to institutions in the financial community. Plaintiff alleges that the Wofex Defendants, through Defendant Kelly, represented to Plaintiff in September of 1999 that they would give him 12% of Wofex founder's stock, an opportunity to participate in the management of the company as an officer and director, and an opportunity to invest in the initial financing round to acquire an additional 5%—7.5% of the next issued equity, in return for his services. Plaintiff further alleges that he accepted this offer.

Plaintiff devoted time and effort to creating the financial aspects and assisting with the preparation of the sales, marketing and branding sections of the business plan. Plaintiff contacted his personal connections in the financial community and arranged meetings in an attempt to secure financial backing for Wofex. Plaintiff played a lead role in presenting the information to such potential investors. Plaintiff alleges that he fully performed his portion of the agreement by the end of September 1999 and helped the Wofex Defendants to secure the financial commitments they needed to establish the initial round of $10–15 million in valuation and to line up investors for the second round of financing, leading to a potential valuation in excess of $200 million. Plaintiff alleges that Defendant Kelly informed him in the beginning of October, 1999 that the Wofex Defendants would not give Plaintiff 12% of the founder's stock, that he would not be permitted to participate in Wofex as an officer or director, and that he would not be permitted to invest during the initial round of financing.

Plaintiff's first claim for relief is for breach of agreement, for which he seeks not less than $20 million. Plaintiff's second claim for relief is for breach of fiduciary duty, and for depriving Plaintiff of the opportunity to gain from the investment, thereby causing him damages not less than $20 million and causing him to be entitled to punitive damages in an amount no less than $20 million. Plaintiff also argues that he is entitled to a constructive trust, holding any Wofex stock to which he is entitled, and to an injunction, enjoining the Wofex Defendants from using the products of his efforts for their use. Plaintiff's third claim for relief alleges that he performed and rendered his services to the Wofex Defendants as part of a joint venture in good faith, specifically alleging that

plaintiff and the Defendants agreed that each would be compensated for their respective services on behalf of the joint venture; i.e., that Plaintiff would receive 12% of the founder's stock of Wofex,

that he would be given a position as an officer and director of the new entity from its inception, and that he would be given the opportunity to invest a minimum of $500,000—$750,000 in the initial round of financing to acquire up to an additional 5% –7.5% of the next issued equity.

(Compl.¶ 47.) He further alleges that he "is entitled to be paid the reasonable value of his services, which should be measured as he and the Defendants had agreed. . . . ." *Id.* ¶ 48. Plaintiff alleges in this claim that Defendants Kelly, Winslow and Chrystal each gave themselves a greater share of the founder's stock and have assumed a greater role in the management of the company, and that the Wofex Defendants' collectively agreed to deprive Plaintiff of that to which he was "contractually or otherwise entitled." *Id.* Plaintiff's fourth claim for relief alleges tortious interference with contract, pursuant to which Plaintiff alleges that Defendants Kelly, Winslow and Chrystal held themselves out as joint venturers to third parties, including Defendant Carlson, who was aware of the agreement among them to provide Plaintiff with stock, a position as an officer and director, and an opportunity to purchase additional stock in the company in exchange for his contribution to the joint venture. *Id.* ¶ 52. Plaintiff alleges that although Defendant Carlson knew of the other Wofex Defendants' commitments to Plaintiff, he took steps inconsistent with those obligations, including:

> falsely advising Kelly; that he (Carlson) could help raise the financing and therefore Zeising was no longer needed, that Zeising should not be given any ownership interest or full-time position with the company because he would take advantage of the foregoing to disrupt the company, and that Defendants were under no legal duty to provide these benefits of the bargain to Plaintiff because

they had not reduced that agreement to writing.

*Id.* ¶ 53. Plaintiff argues that this amounts to tortious interference with the parties contractual relationship because it induced the Wofex Defendants to breach the joint venture agreement, causing Plaintiff damages at least equaling $20 million. Plaintiff's fifth claim for relief alleges that as joint venturers, the Wofex Defendants owed Plaintiff the highest fiduciary duty and that they engaged in a scheme to breach that duty by enticing Plaintiff to provide his services with the intention of furthering their own interests and without the intention of honoring the representations they made to Plaintiff, causing him damages in the amount of $20 million and causing him to be entitled to punitive damages in the amount of $20 million. Plaintiff's sixth and last claim for relief alleges that the Wofex Defendants have been unjustly enriched because of their actions, and that they should be made to disgorge that potion of the profits that would have gone to Plaintiff but for their wrongdoing, and that they should make restitution to Plaintiff, in an amount not less than $20 million.

### *Standard*

In order for a party to succeed on a motion to dismiss under Rule 12(b)(6), it must be clear that the plaintiff can prove no set of facts that would establish his or her claim for relief. *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *Cohen v. Koenig,* 25 F.3d 1168, 1171–72 (2d Cir.1994). Upon a motion to dismiss where materials outside the pleadings are offered, a district court should adhere strictly to the language of Rule .12(b)(6). Fed.R.Civ.P. 12(b)(6) (Advisory Committee Notes). Rule 12(b)(6) gives district courts two options when matters outside. the pleadings are presented in re-

sponse to a 12(b)(6) motion: (1) the court may exclude the additional material and decide the motion on the complaint alone; or (2) it may convert the motion to dismiss to a motion for summary judgment under Federal Rule of Civil Procedure 56 ("Rule 56") and give the parties an opportunity to present supporting material for such motion for summary judgment. *Kopec v. Coughlin*, 922 F.2d 152, 154 (2d Cir.1991) (citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1366 (1969 & Supp.1986)); *Amaker v. Weiner*, 179 F.3d 48, 50 (2d Cir.1999) (stating that "[a]ttachment of an affidavit or exhibit to a Rule 12(b)(6) motion ... does not without more establish that conversion is required"). Exhibits mentioned in and attached to the pleadings, however, may be considered. *See* Fed.R.Civ.P. 10(c) ("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes.").

When making a determination of whether plaintiff can prove any set of facts which would entitle him or her to relief, a court must assume that the allegations in the complaint are true and draw all reasonable inferences in the plaintiff's favor. *Cooper v. Pate*, 378 U.S. 546, 546, 84 S.Ct. 1733, 12 L.Ed.2d 1030 (1964); *Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2d Cir. 1995). A complaint must "contain allegations concerning each of the material elements necessary to sustain recovery under a viable legal theory." *American Council of Learned Societies v. MacMillan, Inc.*, 1996 WL 706911, at *3 (S.D.N.Y. Dec. 6, 1996). Vague and conclusory allegations are insufficient. *Electronics Communications Corp. v. Toshiba America Consumer Products, Inc.*, 129 F.3d 240, 243 (2d Cir. 1997). Courts need not strain to find inferences that are favorable to the plaintiff, which are not apparent of the fact of the complaint, nor are courts required to accept legal conclusions alleged in the plead-

ed facts. *Barrett v. Poag & McEwen Lifestyle Centers–Deer Park Town Center, LLC*, 1999 WL 691850, at *2 (N.D.Ill. Aug. 26, 1999).

■ Here, Plaintiff refers to documents allegedly in his possession which, Plaintiff argues,

> clearly demonstrate the parties' intent to form a joint venture and that [Plaintiff] possessed a significant degree of management and control over the business, at least until he was ousted from the joint venture by the defendants. These documents are more than sufficient to refute defendants' contention that [Plaintiff] simply 'came to Wofex and, for a few weeks, worked to help then find investors.'

(Pl.'s Mem. in Opp'n to the Wofex Defs.' Mot. at 5–6.) Plaintiff also attached numerous documents as exhibits to his opposition to the Wofex Defendants' motion to dismiss. The Court declines to review such extraneous materials and convert the Wofex Defendants' motion to a Rule 56 motion for summary judgment. *See* Fed. R.Civ.P. 12(b)(6) (Advisory Committee Notes) (stating that "extraneous material may not be considered if the court excludes it, but that if the court does not exclude such material the motion shall be treated as a motion for summary judgment and disposed of as provided in Rule 56."); *Friedl v. City of New York*, 210 F.3d 79, 83–84 (2d Cir.2000) (it is error when a district court considers affidavits and exhibits not attached to the original pleadings when deciding a 12(b)(6) motion); *Samara v. United States*, 129 F.2d 594 (2d Cir.), *cert. denied*, 317 U.S. 686, 63 S.Ct. 258, 87 L.Ed. 549 (1942) (same). Accordingly, the Court has reviewed the pleadings alone in an effort to determine whether Plaintiff states a claim on which relief can be granted.

## Discussion

### I. Breach of Contract

 In the Wofex Defendants' motion to dismiss, they argue that Plaintiff's breach of contract claims should be dismissed based on the New York Statute of Frauds, found in New York General Obligations Law, Section 5–701(a)(10) ("Statute of Frauds"). The Statute of Frauds provides that

> [e]very agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith ... if such agreement, promise or undertaking ... [i]s a contract to pay compensation for services rendered in negotiating ... the purchase, sale, exchange ... of a business opportunity [or] business ... and including the creating of a partnership interest. "Negotiating" includes procuring an introduction to a party to the transaction or assisting the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation....

N.Y. Gen. Ob. L. § 5–701(a)(10) (McKinney 1999). Consideration of the Statute of Frauds as an affirmative defense is appropriate on a motion to dismiss, as such a motion is intended to weed out meritless claims, avoiding needless efforts on the parts of the parties and the Court and avoiding needless discovery. *Rosbach v. Industry Trading Co., Inc.,* 81 F.Supp.2d 522, 524 (S.D.N.Y.2000) (holding that oral finder's fee contract was void under New York Statute of Frauds); *see Neitzke v. Williams,* 490 U.S. 319, 327, 109 S.Ct. 1827, 104 L.Ed.2d 338 (1989). This is consistent with the purpose of the Statute of Frauds, namely, to protect people from alleged contractual obligations not supported by written evidence. *See Klein v.*

*Smigel,* 44 A.D.2d 248, 354 N.Y.S.2d 117, 120 (1st Dept.1974), *aff'd,* 36 N.Y.2d 809, 370 N.Y.S.2d 897, 331 N.E.2d 679 (1975). Therefore, the Court must determine whether the alleged agreement at issue falls within the Statute of Frauds.

Plaintiff alleges that his duties under the alleged agreement included

> (1) putting together a financial and business plan for Wofex which would enable them to take the broadly defined ideas with which they were working and translate them into a feasible presentation which would attract legitimate institutional investors and strategic partners for Wofex; (2) calling upon his considerable contacts within the financial industry to make them generally aware of Wofex; and (3) preparing and making detailed presentations to those representatives of institutions within the financial community who expressed interest in and who had the financial wherewithal to participate in Wofex either as investors or as strategic partners.

(Compl.¶ 17.) Courts in this district have interpreted such activities to fall squarely within the Statute of Frauds. In *Orderline Wholesale Distributors, Inc. v. Gibbons, Green, van Amerongen, Ltd.,* 675 F.Supp. 122, 128 (S.D.N.Y.1987), the court held that

> [T]he New York Court of Appeals held that "negotiating a business opportunity" within the meaning of [Section] 5–701(a)(10) includes the use of "connections," "ability" and "knowledge" to facilitate or assist in the transaction by helping the acquirer of the business opportunity meet the right people and have the right information.

*Id.* (citing *Freedman v. Chemical Construction Corporation,* 43 N.Y.2d 260, 401 N.Y.S.2d 176, 372 N.E.2d 12 (1977)). Plaintiff is equally clear on what his compensation would be under the agreement

as he was about what his services would be. As compensation for his services, Plaintiff alleges that he was to receive

> a 12% share of Wofex founder's stock, an opportunity to participate in the management of the company from its inception as both an officer and director, and an opportunity to invest his own monies in the initial financing round to acquire as much as an additional 5%–7.5% of the next issued equity if he were to perform the functions described....

(Compl.¶ 18.) It is clear to the Court that Plaintiff's duties under the alleged oral contract involves no more than an agreement to pay compensation for Plaintiff's services related to the negotiation of a business opportunity, as such term is defined in the Statute of Frauds. This is not a case where "issues of material fact exist with respect to whether a particular contract is covered by, or falls within, the Statute of Frauds." *See Riley v. N.F.S. Serv., Inc.*, 891 F.Supp. 972, 972 (S.D.N.Y. 1995); *Sussex Leasing Corp. v. United States West Fin. Serv., Inc.*, 877 F.2d 200, 202–03 (2d Cir.1989). Plaintiff argues in his opposition papers that the Court, during a conference on December 3, 1999, stated that there are significant issues of fact that must be addressed in the course of discovery. Plaintiff's Opposition to the Wofex Defendants' Motion, at 3; Plaintiff's Opposition to Defendant Carlson's Motion, at 4. Plaintiff does not cite to the transcript, however, the Court has ordered and reviewed the transcript of the December 3, 1999 conference and finds that Plaintiff has misquoted the Court. The Court merely acknowledged that Plaintiff would likely require discovery in order to respond to Defendant's motions, and addressed discovery in connection with Defendants' request that the Court stay discovery pending resolution of the motions. (Ct. Tr., dated Dec. 13, 1999, at 5.) At that conference, the Court stayed discovery un-

til after January 1, 2000. This decision in no way contradicts the Court's prior statements.

When deciding a motion to dismiss, the Court reviews the sufficiency of the pleadings in the complaint to determine, as a matter of law, whether it states a claim. Plaintiff cannot "cure" his pleading deficiencies in the complaint by addressing them in his motion papers. The Court holds that the agreement into which Plaintiff alleges the parties entered falls squarely within the Statute of Frauds and was required to be in writing. As it was an oral agreement, Plaintiff is barred from enforcing it. Therefore, the Wofex Defendants' motion to dismiss Plaintiff's first claim is GRANTED and Plaintiff's first claim for breach of agreement is DISMISSED WITH PREJUDICE.

## II. *Quantum Meruit*

Plaintiff seeks recovery in *quantum meruit* on the ground that Plaintiff allegedly rendered his services to the Wofex Defendants in good faith and is entitled to be paid for the reasonable value of those services according to the alleged agreement. (Compl.¶ 46–48.) Even if a plaintiff fails to prove a valid contract, he may be able to recover in *quantum meruit* "to assure a just and equitable result." *Bradkin v. Leverton*, 26 N.Y.2d 192, 196, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970). In order to state a claim in *quantum meruit*, a plaintiff must allege (1) performance of services in good faith; (2) acceptance of these services by the person to whom they are rendered; (3) an expectation of compensation; and (4) the reasonable value of the services. *GSGSB, Inc. v. New York Yankees*, 862 F.Supp. 1160, 1170 (S.D.N.Y.1994).

As stated above, the underlying agreement at issue in this case was

required to be in writing, because "in some circumstances the important services of an intermediary may be accomplished in the course of a few and even momentary conversations, [thus,] false or exaggerated clams can be easily asserted. It is this type of situation to which the statute [§ 5–701(a)(10) ] is addressed." *Orderline*, 675 F.Supp. at 128 (citation omitted). Under New York law, "a contract that is unenforceable under the Statute of Frauds is inadmissible as evidence of the reasonable value of services." *Longo v. Shore & Reich, Ltd.*, 25 F.3d 94, 97 (2d Cir.1994). In a breach of contract case, "[t]he requirement of a writing cannot be circumvented by an action for compensation in *quantum meruit.*" *Orderline*, 675 F.Supp. at 128 (citations omitted); *Zaitsev v. Salomon Brothers, Inc.*, 60 F.3d 1001, 1004 (2d Cir.1995) (stating that where a contract claim is barred by the Statute of Frauds, a plaintiff cannot simply restate it in a *quantum meruit* claim). Here, there is a complete absence of a memorandum supporting Plaintiff's contract claims, and Plaintiff merely attempts to overcome the bar of the Statute of Frauds by seeking recovery in *quantum meruit. See Athletes and Artists, Inc. v. Millen*, 1999 WL 587883, at *7 (S.D.N.Y. Aug. 4, 1999) (interpreting New York case law as holding that the Statute of Frauds provision relating to negotiation of a business opportunity extends to claims stated under a theory of *quantum meruit* in situations where there is a complete absence of a memorandum). While such quasi-contractual relief certainly is appropriate in some cases, its application to this case would permit Plaintiff to recover on an unenforceable contract, circumventing the carefully drawn guidelines of contract law. Accordingly, Plaintiff's claim in *quantum meruit* is DISMISSED WITH PREJUDICE.

### III. *Unjust Enrichment*

▮▮▮▮▮ Plaintiff also alleges that, "[a]s a result of the financing of Wofex, Defendants have been and will be unjustly enriched." (Compl.¶ 68.) In order to state a claim for unjust enrichment, a plaintiff must plead that (1) the defendant was enriched; (2) the enrichment was at the plaintiff's expense; and (3) the circumstances were such that equity and good conscience requires defendants to make restitution. *Huntington Dental & Med. Co., Inc. v. Minnesota Mining and Mfg. Co.*, 1998 WL 60954, at *6 (S.D.N.Y. Feb. 13, 1998); *Violette v. Armonk Assoc. L.P.*, 872 F.Supp. 1279, 1282 (S.D.N.Y.1995). As already stated in the Court's discussion of Plaintiff's claim in *quantum meruit*, Plaintiff cannot simply restate his contract claim, which is barred by the Statute of Frauds, in an attempt to obtain damages in a quasi-contractual claim. *Abrams v. Unity Mutual Life Ins. Co.*, 237 F.3d 862, 864–65 (7th Cir.2001) (stating that a claim for unjust enrichment may be barred if it is based on the same promise and seeks the same relief as the alleged oral agreement); *Orderline*, 675 F.Supp. at 128 (citation omitted). "[T]he law prevents a plaintiff from circumventing the reach of the [S]tatute of [F]rauds by asserting a quasi-contract claim, such as *quantum meruit* or unjust enrichment." *Huntington Dental*, 1998 WL 60954, at *7 (citations omitted).

The New York Statute of Frauds provides that it "shall apply to a contract implied in fact or in law." N.Y. Gen. Oblig. Law § 5–701(a)(10). Here, Plaintiff's unjust enrichment and *quantum meruit* claims depend upon proof of an unenforceable contract. *Abrams*, 237 F.3d at 866; *Tower International, Inc. v. Caledonian Airways, Limited*, 1998 WL 3614, at *3 (2d Cir.1998) (noting that in order to succeed on its unjust enrichment claim, plaintiff has to prove the common law ele-

ments of unjust enrichment and that the writing requirement of the Statute of Frauds was satisfied); *Tallini v. Business Air, Inc.,* 148 A.D.2d 828, 830–31, 538 N.Y.S.2d 664 (3d Dept.1989). Therefore, as in his contract claim, Plaintiff cannot overcome the Statute of Frauds on a motion to dismiss on his unjust enrichment claims. Accordingly, Plaintiff's claim for unjust enrichment is DISMISSED WITH PREJUDICE.

### IV. *Fraudulent Inducement*

Plaintiff alleges that Defendants Kelly, Winslow and Chrystal agreed to compensate him for his services, induced him into performing with no intention of honoring such agreement. Plaintiff alleges that he relied on the Wofex Defendants' misrepresentations to his detriment.

■ In order to state a claim for fraudulent inducement, Plaintiff must allege that (1) defendants made a representation as to a material fact; (2) which was false; (3) which defendants knew to be false; (4) made for the purpose of inducing plaintiff to rely on such misrepresentations; and (5) on which plaintiff reasonably relied (6) to his detriment. *Orderline,* 675 F.Supp. at 128–29 (citing *Channel Master Corp. v. Aluminium Limited Sales, Inc.,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833 (1958)).

■ New York law makes clear that a plaintiff may not circumvent the Statute of Frauds by "simply dressing up a breach of contract claim by further alleging that the promisor had no intention, at the time of the contract's making, to perform its obligations thereunder...." *Best Western Int'l, Inc. v. CSI Int'l Corp.,* 1994 WL 465905, at *4 (S.D.N.Y. Aug. 23, 1994) (citations omitted); *Lehman v. Dow Jones & Company, Inc.,* 783 F.2d 285, 294–95 (2d Cir.1986); *Caniglia v. Chicago Tribune– New York News Syndicate, Inc.,* 204 A.D.2d 233, 233, 612 N.Y.S.2d 146 (1st Dept.1994); *Drexel Burnham Lambert, Inc. v. Saxony Hts. Realty Assoc.,* 777 F.Supp. 228, 235 (S.D.N.Y.1991). However, a plaintiff may recover based on a promise made with no intent to perform, if it is distinct from the breach of contract action. *Lehman,* 783 F.2d at 295. The New York Court of Appeals stated that:

> If the proof of a promise or contract, void under the statute of frauds, is essential to maintain the action, there may be no recovery, but, on the other hand, one who fraudulently misrepresents himself as intending to perform an agreement is subject to liability *in tort* whether the agreement is enforceable or not.... The policy of the statute of frauds is not directed at cases of dishonesty in making a promise ... never intended as an instrument to immunize fraudulent conduct, the statute may not be so employed.

*Channel Master Corp. v. Aluminium Ltd. Sales,* 4 N.Y.2d 403, 176 N.Y.S.2d 259, 151 N.E.2d 833, 836 (1958) (internal citations omitted). Accordingly, the Court must determine whether the complaint pleaded the elements of an action for fraudulent inducement as distinct from the contract claims. To do this, the Court must determine whether Plaintiff claims that the "fraud" consists of more than Defendant's alleged failure to honor the oral contract. *Lehman,* 783 F.2d at 295.

■ Here, Plaintiff allegations for fraudulent inducement are strikingly similar to his allegations for breach of contract. Plaintiff alleges that the Wofex Defendants made misrepresentations, which they knew to be false, to Plaintiff for the purpose of inducing him to perform the unenforceable oral agreement, while having "no intention of actually honoring any joint venture agreement with Plaintiff or

in compensating him for his contributions." (Compl.¶ 61.) Plaintiff further alleges that he relied on Defendants' misrepresentations to his detriment. (Compl.¶¶ 59–66.) Here, although Plaintiff has stated the requisite elements for fraudulent inducement under *Orderline*, it is clear to the Court that, even viewing the complaint in the light most favorable to Plaintiff, the fraudulent inducement claim merely attempts to dress up the breach of contract claim by alleging that the Wofex Defendants had no intention to perform the oral contract at the time they allegedly entered into it. Accordingly, the Wofex Defendants' motion to dismiss Plaintiff's claim for fraudulent inducement is GRANTED and Plaintiff's claim for fraudulent inducement is DISMISSED WITH PREJUDICE.

## V. Joint Venture Claim

■ Plaintiff also makes a claim for breach of fiduciary duty. Principles of partnership law control the analysis of joint venture agreements, and, coventurers, like co-partners, owe each other the finest loyalty and the utmost good faith throughout the course of the enterprise. *Ebker v. Tan Jay Int'l, Ltd.*, 741 F.Supp. 448, 468 (S.D.N.Y. July 5, 1990). As Plaintiff's fiduciary duty claim is predicated on the conclusion that the agreement was a joint venture, the Court must first determine whether Plaintiff adequately pleaded a joint venture in the complaint.

■ Plaintiff claims that the parties' agreement amounted to a joint venture, the "purpose of which was to combine resources and efforts to create an effective business plan and to present it to prospective investors and strategic partners capable of completing the first two phases of company financing, and beyond." (Compl.¶ 39.) If the oral agreement entered into by the parties was a joint venture, it is not subject to the Statute of Frauds and therefore, may be enforceable. *Shore Parkway Assoc. v. United Artists Theater Circuit, Inc.*, 1993 WL 361646 (S.D.N.Y. Sept.14, 1993); *Campo v. First Nationwide Bank*, 857 F.Supp. 264, 272 (E.D.N.Y. June 30, 1994).

■ Plaintiff cannot sustain its burden of proper pleading by merely restating the allegations in his contract claim and changing the label of the agreement to that of a joint venture, in an effort to escape the Statute of Frauds. *Yonofsky v. Wernick*, 362 F.Supp. 1005, 1026 (S.D.N.Y. 1973) (citations omitted). A joint venture represents more than a simple contractual relationship. *Precision Testing Laboratories v. Kenyon Corporation*, 644 F.Supp. 1327, 1349 (S.D.N.Y.1986). Thus, it is insufficient for a Plaintiff to allege mere joint ownership, a community of interest, or a joint interest in profitability. *Shore Parkway Associates v. United Artists Theater Circuit, Inc.*, 1993 WL 361646 (S.D.N.Y. Sept.14, 1993) (citing *United States v. Standard Oil Co.*, 155 F.Supp. 121 (S.D.N.Y.1957), *aff'd*, 270 F.2d 50 (2d Cir.1959)).

■ In order to properly plead a joint venture, a party must plead four essential elements: (1) a specific agreement manifesting the intent of the parties to be associated as joint venturers; (2) a contribution of property, financial resources, effort, skill or knowledge on the part of each party; (3) a provision for the sharing of profits and losses; and (4) some degree of joint control and joint management by the parties over the enterprise. *Itel Containers v. Atlanttrafik Exp. Serv. Ltd.*, 909 F.2d 698, 701 (2d Cir.1990); *Chromalloy American Corporation v. Universal Housing Systems of America, Inc.*, 495 F.Supp. 544, 549 (S.D.N.Y.1980), *aff'd*, 697 F.2d 289 (2d Cir.1982). The absence of any one of these elements is

fatal to the establishment of a joint venture. *United States Airways Group, Inc. v. British Airways PLC*, 989 F.Supp. 482, 492–93 (S.D.N.Y.1997); *Precision Testing*, 644 F.Supp. at 1348.

The first requirement, that there be a specific agreement manifesting the intent of the parties to be associated as joint venturers element to the creation of a joint venture, is crucial because

> a joint venture is a voluntary relationship, the origin of which is wholly *ex contractu*, i.e., it is not a status created by law. This manifestation of intent need not be explicit, but the parties must be clear that they intend to form a joint venture, which is a fiduciary relationship, and not a simple contract.

*Precision*, 644 F.Supp. at 1349 (internal citations omitted). Reading the complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has plead nothing that demonstrates an intent to enter into anything other than a simple contractual relationship. Plaintiff has alleged that the parties entered into an agreement, "the purpose of which was to combine resources and efforts to create an effective business plan. . . ." (Compl.¶ 39.) The ultimate inquiry, however, is whether the parties have so joined their property, interests, skills, and risks their contributions have become one and their commingled properties and interests have been made subject to each of the others' actions, on the trust and inducement that each would act for their joint benefit. *Campo*, 857 F.Supp. at 272 (citing *Precision*, 644 F.Supp. at 1349). The Court cannot glean such an intent from the allegations in the complaint. Although the actual term "joint venture" need not be employed by the parties, and such intent to enter into a joint venture may be either express or implied, *McGhan v. Ebersol*, 608 F.Supp. 277, 282 (S.D.N.Y. 1985), Plaintiff has alleged nothing to sug-

gest that the parties either expressly or impliedly intended to enter into a joint venture. *See Barrett*, 1999 WL 691850, *6 (N.D.Ill. Aug. 26, 1999) (stating that although a plaintiff need not plead the element of the claim with the same specificity necessary in state court, the court must be able to infer each of the elements of a joint venture from the facts and conclusions alleged in the complaint in order to find the complaint in order to find that it states a claim); *Barrett*, 1999 WL 691850, at *2 (courts are not required to accept parties' legal conclusions in the pleadings). The Court notes, however, that Plaintiff argues in his opposition papers that documents in his possession, received from the Wofex Defendants during limited discovery, "clearly demonstrate the parties' intent to form a joint venture and that [Plaintiff] possessed a significant degree of management and control over the business . . . . [and] are more than sufficient to refute defendants' contention that [Plaintiff] simply 'came to Wofex' and, for a few weeks, worked to help them find investors.'" Pl.'s Mem. in Opp'n to Wofex Defs.' Mot. at 5 (citation omitted). The Court cannot consider argument that additional documents exist to prove allegations not even plead in the complaint. Federal pleading requirements are lenient, however, the bare minimum requirements must be alleged. Plaintiff has failed to do that.

With respect to the requirement that there be a provision in the agreement for the sharing of profits and losses, the Plaintiff has not adequately alleged such element. This requirement is "[a]n indispensable essential of a contract of partnership or joint venture. . . ." *Steinbeck v. Gerosa*, 4 N.Y.2d 302, 317, 175 N.Y.S.2d 1, 151 N.E.2d 170 (1958). If there was no agreement as to the manner in which the parties were to share in the profits and the losses, the agreement did not create a joint

venture. *Natuzzi v. Rabady*, 177 A.D.2d 620, 576 N.Y.S.2d 326 (2d Dept.1991) (citations omitted). Here, Plaintiff merely alleges that he was to receive compensation for his services, in the amount of 12% of Wofex founder's stock, an opportunity to participate in the management of the company, and an opportunity to invest his own monies in the initial financing round to acquire as much as an additional 5%–7.5% of the next issued equity. This allegation cannot be construed as providing for the sharing of profits and losses among the parties, even construed liberally in favor of Plaintiff.[1]

Accordingly, the Court finds that Plaintiff fails to allege the essential elements of a joint venture. *See U.S. Airways Group, Inc.*, 989 F.Supp. at 493 (holding that complaint fails to allege the essential elements of a joint venture, based on the absence of sufficient allegations of intent and sharing of losses and profits, alone); *Orderline*, 675 F.Supp. at 127. Despite the liberal pleading standards of the Federal Rules of Civil Procedure applied by the Court, Plaintiff has failed to adequately allege facts sufficient to plead the existence of a joint venture. As Plaintiff's breach of fiduciary duty claim stems from his inadequate pleading of a joint venture, this claim is DISMISSED WITH PREJUDICE.

## VI. *Tortious Interference With Contract*

Plaintiff argues that Defendant Carlson advised Defendant Kelly that Defendant Carlson could help raise the financing they needed, and therefore the Wofex Defendants no longer needed Plaintiff. Defendant Carlson allegedly suggested that Plaintiff should not be given any ownership interest or full-time position in the

company, because he would take advantage of the position and disrupt the company. Carlson allegedly told the Wofex Defendants that they were under no legal duty to provide these benefits of the bargain to Plaintiff because they had not reduced the agreement to writing. (Compl.¶ 53.) Based on these alleged actions, Plaintiff alleges tortious interference with contract against Defendant Carlson.

 In order to state a claim for tortious interference with contract under New York Law, a plaintiff must allege that (1) a valid and enforceable contract between the plaintiff and a third party existed; (2) the defendants had knowledge of the contract; (3) the defendants intentionally procured the breach; and (4) the plaintiff suffered damages. *Finley v. Giacobbe*, 79 F.3d 1285, 1294 (2d Cir.1996); *Lennon v. Seaman*, 63 F.Supp.2d 428, 430 (S.D.N.Y.1999); *Foster v. Churchill*, 87 N.Y.2d 744, 642 N.Y.S.2d 583, 665 N.E.2d 153, 156 (1996). The Court has held that the Statute of Frauds bars Plaintiff from enforcing the oral agreement. Further, the Court has held that Plaintiff has not adequately plead a joint venture. Because the Court holds that Plaintiff has not plead the existence of a valid, enforceable contract existed and has dismissed Plaintiff's claims based on contract law, Plaintiff cannot meet the first prong of the test for tortious interference. Therefore, Plaintiff's claim against Defendant Carlson for tortious interference with contract must fail as a matter of law. *See Missigman v. USI Northeast, Inc.*, 2001 WL 135238, at *17 (S.D.N.Y. Feb. 7, 2001). Accordingly, Plaintiff's claim against Defendant Carlson is DISMISSED WITH PREJUDICE.

---

**1.** Because the Court finds that Plaintiff has not alleged intent or profit sharing and loss sharing, and finds that there is no joint venture based on these deficiencies, there is no need for the Court to address the other requirements for the creation of a joint venture.

### Conclusion

For the reasons stated above, Plaintiff's claims for breach of agreement, breach of fiduciary duty, *quantum meruit*, fraudulent inducement, and unjust enrichment against the Wofex Defendants are DISMISSED WITH PREJUDICE. Plaintiff's claim against Defendant Carlson is DISMISSED WITH PREJUDICE.