Chief Judge Fuld.
On this appeal from the dismissal of the complaint on motion before trial, we are called upon to say whether—accepting its allegations as true and reading them most liberally in favor of the pleader (see, e.g., Kober v. Kober, 16 N Y 2d 191, 193; Denihan Enterprises v. O’Dwyer, 302 N. Y. 451, 458)—it states a cause of action.
The complaint recites that the plaintiff, employed by H. L. Federman & Co., Inc., to find corporations which needed financing, procured for his employer the business of financing Mauchly Associates, Inc. By a letter dated October 25, 1966, Federman acknowledged not only that the plaintiff had earned $10,000 for having arranged $200,000 worth of financing in Mauchly but, in addition, that he was “ to receive 10% of [any] net profit ” which it (Federman) might realize “ [s]hould there be a second financing, or any other financing * * * concerning Mauchly *195 in the year 1967 The complaint further recites that the defendant was an officer, director and nonvoting stockholder of Federman, that he became acquainted with Mauchly only through the plaintiff and that he knew or should have known that the plaintiff was to receive 10% of any profits derived from financing Mauchly. However, the complaint continues, solely through the ‘ ‘ business relations between Mauchly and Federman created by the plaintiff ”, the defendant was enabled, without the plaintiff’s knowledge, to “ arrange private financing transactions ” with Mauchly. The plaintiff, who learned of the defendant’s actions later, charges that there was an implied promise by the defendant to pay the plaintiff 10% of his net profit—which amounted to more than $1,000,000 — and that, although “due demand ” was made by him, the defendant refused to compensate him £ £ out of the profit from his Mauchly financing ’’.[1] In a second cause of action, the plaintiff, claiming that he is entitled to 10% of the profits realized by the defendant, seeks an accounting.
The defendant moved to dismiss the complaint, pursuant to CPLR 3211 (subd. [a]), on the ground (1) that the causes of action were barred by the Statute of Frauds (par. 5) and (2) that the complaint failed to state a cause of action (par. 7). Although not admitting that the plaintiff introduced Mauchly to Federman or that he learned of Mauchly through the plaintiff in the first instance, the defendant does admit that some time in 1966, and again in January and June, 1967, he or his wife loaned Mauchly more than $200,000 and that he became a director of that corporation. He contends, however, that, even if there had been an agreement between him and the plaintiff, the Statute of Frauds (General Obligations Law, § 5-701, subd. 10) renders it unenforceable since there was no writing and that the complaint fails to state, a cause of action since he, as an officer of Federman, was not individually liable under the plaintiff’s agreement with Federman.
The court at Special Term granted the defendant’s motion and dismissed the complaint. It was its view that, since the plaintiff was, in effect, seeking a “ finder’s fee,” the Statute of *196 Frauds required a writing signed by the defendant and that the letter from Federman did not remove the statute’s bar. The Appellate Division affirmed the resulting order of dismissal without opinion. Two justices dissented; concluding that the complaint stated a cause of action in tort, they read it ‘ ‘ as alleging both a breach of the contract induced by the defendant and an interference by defendant in the performance of the contract.”
"We agree with the Appellate Division dissenters that the complaint should be upheld but we read it, as does its draftsman, as stating a cause of action in quasi contract.
Quasi contracts are not contracts at all, although they give rise to obligations more akin to those stemming from contract than from tort.[2] The contract is a mere fiction, a form imposed in order to adapt the case to a given remedy. (See Keener, The Law of Quasi-Contracts [1893], p. 14.) Briefly stated, a quasi-contraetual obligation is one imposed by law where there has been no agreement or expression of assent, by word or act, on the part of either party involved. The law creates it, regardless of the intention of the parties, to assure a just and equitable result. (See, e.g., Dentists’ Supply Co. v. Cornelius, 281 App. Div. 306, 308, affd. 306 N. Y. 624; Dermott v. State of New York, 99 N. Y. 101, 109; see, also, Miller v. Schloss, 218 N. Y. 400, 407; Ward v. Taggart, 51 Cal. 2d 736, 741; Restatement, Restitution, § 1; 1 Corbin, Contracts [1963], § 19; 1 Williston, Contracts [3d ed., 1957], § 3A.) “ The obligation implied under such circumstances ”, the court wrote in the Dermott case (99 N. Y., at p. 109), “is such as justice would *197 dictate, and must conform to what the court may assume would have been the agreement of the parties, if the situation had been anticipated and provided for.” The applicable principle finds apt and more full statement in Miller v. Schloss (218 N. Y. 400, 407, supra):
“ A quasi or constructive contract rests upon the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another. In truth it is not a contract or promise at all. It is an obligation which the law creates, in the absence of any agreement, when and because the acts of the parties or others have placed in the possession of one person money, or its equivalent, under such circumstances that in equity and good conscience he ought not to retain it, and which ex aequo et bono belongs to another. Duty, and not a promise or agreement or intention of the person sought to be charged, defines it. It is fictitiously deemed contractual, in order to fit the cause of action to the contractual remedy.”
Although there was no agreement between them, express or implied, the defendant received a benefit from the plaintiff’s services under circumstances which, in justice, preclude him from denying an obligation to pay for them. As already noted, the plaintiff had, according to the complaint, introduced Mauchly to Federman and, under his written agreement with Federman, he was to receive from that party, in addition to an introduction fee of $10,000, “ 10% of :[its] net profit ” on a “ second financing * * * concerning Mauchly in the year 1967 ”. It was solely from this relationship, which the plaintiff had created between Federman and Mauchly, that the defendant’s dealings with Mauchly arose. By intruding into the transaction set up by the plaintiff, the defendant made use of his corporate position to promote his own private interests. More specifically, when the plaintiff procured Mauchly for Federman, he fully performed his part of the contract with Federman and thereupon became entitled, without more, to 10% of any profit which that corporation would have realized from any further financing of Mauchly. Since, -in short, the defendant took unto himself the *198 Mauchly financing, he obtained the benefit of the plaintiff’s labors and must compensate him for such services.
This brings us to the defendant’s contention — actually his threshold argument-—-that the absence of a writing between him and the plaintiff defeats the latter’s claim. It is true that quasi contract denotes a contract implied in law and that the Statute of Frauds’ requirement of a writing to enforce an agreement for finders’ or brokers’ commissions expressly applies “to a contract implied in fact or in law” (General. Obligations Law, § 5-701, subd. 10).[3] It is on the basis of such reasoning that the defendant asserts the bar of the statute. Thus, in his brief, he urges that the plaintiff may not avoid its impact by -casting his action in a guise other than one for a finder’s fee through the “mere expediency” of labeling such a claim -as one in ‘ ‘ quantum meruit ’ ’.
A contract to pay a finder’s fee must, of course, be in writing and, obviously, this requirement may not be avoided by an action for compensation in quantum meruit. (See, e.g., Cohon & Co. v. Russell, 23 N Y 2d 569, 575; Minichiello v. Royal Business Funds Corp., 18 N Y 2d 521; see, also, Intercontinental Planning v. Daystrom, Inc., 24 N Y 2d 372, 378.) However, the contract required to be in writing is one between the finder and the principal or employer with whom he has assertedly contracted and from whom he seeks compensation. This is apparent from the evils at which the statute is aimed. ‘ ‘1 The nature of the transactions ’ ”, we wrote in the Minichiello case, quoting from the Law Revision Commission’s Report reoom *199 mending the enactment of subdivision 10 of section 31 of the Personal Property Law-—-the predecessor of subdivision 10 of section 5-701 of the General Obligations Law (18 N Y 2d, at p. 526) — is such that, ‘11 in the absence of the requirement of a writing, unfounded and multiple claims for commissions [by business brokers and finders] are frequently asserted, and employers often seek to escape liability by denying the fact of employment. These controversies are commonly resolved by juries on conflicting testimony, with the consequent danger of erroneous verdicts ’ (1949 Report of N. Y. Law Rev. Comm. [N. Y. Legis. Doc., 1949, No. 65 (G), p. 615]).”
Quite manifestly, the purpose of the statute is to protect against fraudulent dealings between the finder and his employer, not between the finder and a third party, such as the defendant before us. Since there is no danger of “ unfounded and multiple claims for commissions ” where a third party is concerned, the Statute of Frauds provides no defense to him. When, therefore, a finder’s contract meets all the requirements of the statute, a third party may not ‘1 take over ’ ’ that contract and then evade his obligation to the finder by relying upon the statute. This is precisely what the present defendant is attempting to do. Federaran had promised in writing to pay the plaintiff a finder’s fee on any Mauchly financing and, when the defendant took over the corporation’s financing arrangements, he assumed its obligation to the plaintiff for commissions. He is not privileged to assert the defense of the statute, which would not have been available to Federman.
In sum, given the facts alleged, it would be against good conscience for the defendant to retain the benefits of the contract which the plaintiff made with the defendant’s corporation without compensating the plaintiff for the services he fully performed pursuant to that contract. Accordingly, if the plaintiff proves the allegations of his complaint, he will be entitled to recover from the defendant, as damages, the amount which the defendant’s corporation had obligated itself to pay him if there was a 61 second financing * * * concerning Mauchly.”[4]
*200 The order appealed from should be reversed, with costs in all courts, and the case remitted to the Supreme Court, Kings County, for further proceedings in accordance with this opinion.
Judges Scileppi, Bergan, Breitel, Jasen and Gibson concur; Judge Burke taking no part.
Order reversed, etc.

. The plaintiff does not specify the amount of the profit; he simply alleges that the defendant, by his private financing of Mauchly, was able to purchase stock in that corporation at a cost of $140,000 and that the present value of such stock “ is in excess of $1,660,000

. “ It might be asked,” Keener wrote in Ms treatise on The Law of Quasi-Contracts- (p. 15), “Why did the court extend to this class of obligations the remedies peculiar to contracts rather than the remedies peculiar to tort? The right conferred in quasi-contract, and the right, the violation of which constitutes a tort, undoubtedly possess this common characteristic,— that the obligation is imposed by operation of law, regardless of the consent of the defendant. But treating a tort ,as the violation of a right in rem, the obligations differ in an important particular; for while to avoid committing a tort, one need only forbear, to discharge the obligation imposed by quasi-contract one must act. It is true that the obligation imposed by a contract may be simply to forbear; but the obligation most generally assumed under a contract requires one to act, and therefore contract rather than tort would naturally suggest an analogy.”

. Insofar as pertinent, section 5-701 of the General Obligations Law recites: “Every agreement, promise or undertaking is void, unless it or some note of memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:.
“ 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein * ** * ‘ Negotiating ’ includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation (Emphasis supplied.)

. In view of the fact that there was no fiduciary relationship between the plaintiff and the defendant, the plaintiff has no right to the accounting sought by the second cause of action. (See, e.g., Schantz v. Oakman, 163 N. Y. 148; Brigham v. McCabe, 27 A D 2d 100, 105, affd. 20 N Y 2d 525.)