Irving P. **KARLIN**, Plaintiff,

v.

**Warren E. AVIS and Avis Industrial Corp., Defendants.**

No. 71–C–195.

United States District Court,
E. D. New York.

Oct. 15, 1971.

See also, D.C., 326 F.Supp. 1325.

Joseph Heller, New York City, for plaintiff; Jacob E. Heller, New York City, of counsel.

Royall, Koegel & Wells, New York City, for defendants; William S. Greenawalt, New York City, of counsel.

BARTELS, District Judge.

Plaintiff Karlin brings this action for a finder's fee, in which he claims that the defendant, Warren E. Avis (Avis), president of defendant Avis Industrial Corp. (Industrial), engaged Karlin to find a purchaser for Avis' shares of stock in Industrial and that Industrial, through its president and vice-president, engaged Karlin to find a buyer for shares of its treasury stock. Karlin further claims that through his efforts an agreement of sale (purchase agreement) was signed on January 16, 1969, between Avis and Industrial as sellers and Ultra Dynamics Corporation (Ultra Dynamics) as buyer, whereby Ultra Dynamics agreed to purchase the above shares of Industrial stock from the defendants.

Karlin moves for summary judgment pursuant to Rule 56(b), F.R.Civ.P., 28 U.S.C., and both Avis and Industrial counter-move for judgment on the pleadings under Rule 12(c), F.R.Civ.P., 28 U.S.C., or, in the alternative, for summary judgment pursuant to Rule 56(b), F.R.Civ.P., 28 U.S.C. At issue is whether any agreement or contract between the parties for a finder's fee or compensation was reduced to a memorandum or writing subscribed by the defendants, in compliance with the New York Statute of Frauds, General Obligations Law, McKinney's Consol.Laws, c. 24–A, § 5–

701(10).[1] From the pleadings, exhibits and affidavits of the parties, the pertinent undisputed facts are as follows:

Conversations about the possible sale of the stock of Industrial to a buyer represented by Karlin, were begun between Karlin and one Sidney McNiece, an officer of Industrial in September of 1968. On October 16, 1968, Karlin wrote a letter to Thomas Ault (Ault), president of Industrial, who was conducting negotiations for Avis, in which Karlin discussed the proposal of one Richard Weisinger, attorney for the prospective buyer, and in which Karlin wrote:

"I wish to advise you that Mr. Weisinger has agreed that if a contract is consummated, as buyers, he will pay one half of the applicable finder's fee; the other half to be paid by the seller. This finder's fee would accrue to me on the basis of the 5–4–3–2–1 formula or in equivalent Avis stock at market value on date of contract."

On October 24, 1968, Weisinger wrote a memorandum to Karlin, in which he stated:

"I agree that any deal which may be resolved for the above acquisition will include a 5% finder's fee of which ½ (one half) will be paid to Irving Karlin by the buyer and the other ½ (one half) by the Seller."

On November 16, 1968, Karlin wrote a letter to McNiece, mentioning the proposed terms of the sale and stating:

"In my letter to Mr. Ault, I confirmed the foregoing and indicated Mr. Weisinger's agreement to pay one half of the finder's fee, without disturbing the price of $4,000,000. targeted. In our personal meetings and phone conversations you made it clear that you were acting solely in Mr. Avis's personal interest without any claims for finders fees. I presume Mr. Ault was acting similarly in his participation at the meetings."

Karlin also enclosed with this letter a proposed letter of intent, dated October 28, 1968, from Weisinger to Avis, setting forth in four numbered paragraphs the proposed terms of the sale, and also setting forth in a paragraph numbered "(5)" the following:

"The parties agree that the finder's fee payable to Irving P. Karlin will be paid 50% by the seller and 50% by the buyer."

Space was provided for Avis' signature at the bottom of this proposed letter of intent but Avis never signed it.

On January 16, 1969, Avis signed an acceptance of a letter agreement addressed to him by Ultra Dynamics providing for the sale of his stock to Ultra Dynamics, which included the following paragraphs:

"(c) You have not dealt with any broker or finder in connection with the sale of the Shares, other than Mr. Irving P. Karlin.

\* \* \* \* \* \*

15. We acknowledge that no broker or finder has been involved in our negotiations except Mr. Irving P. Karlin. We agree that we shall pay in

---

1. "§ 5–701. \* \* \* Every agreement, promise or undertaking is void, unless it or some note or memorandum thereof be in writing, and subscribed by the party to be charged therewith, or by his lawful agent, if such agreement, promise or undertaking:
 \* \* \* \* \*
 10. Is a contract to pay compensation for services rendered in negotiating a loan, or in negotiating the purchase, sale, exchange, renting or leasing of any real estate or interest therein, or of a business opportunity, business, its good will, inventory, fixtures or an interest therein, including a majority of the voting stock interest in a corporation and including the creating of a partnership interest. 'Negotiating' includes procuring an introduction to a party to the transaction or assisting in the negotiation or consummation of the transaction. This provision shall apply to a contract implied in fact or in law to pay reasonable compensation but shall not apply to a contract to pay compensation to an auctioneer, an attorney at law, or a duly licensed real estate broker or real estate salesman."

full the finder's fee payable to Mr. Karlin upon final consummation of this transaction."

On the same date, Ault as president of Industrial signed another agreement on behalf of Industrial to sell treasury stock of Industrial, in which there was no mention of either Karlin or any finder's fee.

On January 16, 1969, Karlin signed an agreement with Ultra Dynamics, the buyer, reading as follows:

"In connection with the agreements between you and Warren E. Avis and you and Avis Industrial Corporation I have acted as finder. In full consideration thereof I agree to accept Nine Thousand (9,000) Shares of Common Stock, $.10 par value, of Ultra Dynamics Corporation and do hereby release you from any and all further claims thereunder. Such payment to me shall be paid upon final consummation of the foregoing transaction.

Irving P. Karlin
Irving P. Karlin

Agreed and Accepted

Ultra Dynamics Corporation"

Based upon these writings and Karlin's legal interpretation of oral conversations between the parties, Karlin alleges that a valid contract existed between Avis and Industrial and himself, whereby both were obligated to pay him one-half of the finder's fee, and that this contract was not altered by Avis' purchase agreement with Ultra Dynamics because there was no consideration for Karlin's acceptance from Ultra Dynamics of a lesser sum than that to which he claims he was entitled. Defendants, in reply, point out that there was no agreement at all on their part to pay Karlin a finder's fee and that the writings mentioned, including in particular the January 16, 1969 agreement of sale between Avis and Ultra Dynamics, contain no such agreement and at all events these writings are insufficient to meet the requirements of the Statute of Frauds.

 That the New York Statute of Frauds is applicable to the facts in this case, cannot be denied. Minichiello v. Royal Business Funds Corp., 18 N.Y.2d 521, 277 N.Y.S.2d 268, 223 N.E.2d 793 (1966), cert. denied, 389 U.S. 820, 88 S. Ct. 41, 19 L.Ed.2d 72 (1967); Clivner v. Ackerman, 51 Misc.2d 856, 274 N.Y.S.2d 112 (1966), affirmed, 30 A.D.2d 642, 291 N.Y.S.2d 759 (1968). This being so, it is incumbent upon Karlin to produce some writings subscribed by the defendants, in which they agree to pay the finder's fee.[2] The only writing signed by Avis is the agreement of January 16, 1969, for the sale of shares of Industrial stock and in which Ultra Dynamics, and not Avis, agreed to pay in full any finder's fee.

Karlin attempts to evade the demands of the Statute by asserting (1) that his case is governed by Morris Cohon & Co. v. Russell, 23 N.Y.2d 569, 297 N.Y.S.2d 947, 245 N.E.2d 712 (1969), in that the purchase agreement between Avis and Ultra Dynamics is in effect a memorandum of agreement between Avis and Karlin sufficient to satisfy the Statute, and that the purchase agreement between Industrial and Ultra Dynamics also somehow comes within this principle inasmuch as the president and vice-president of Industrial had full knowledge of the terms of compensation due Karlin as a finder when they signed the agreement to sell the treasury stock to Ultra Dynamics, and (2) that if the purchase agreement alone between Avis and Ultra Dynamics was not a sufficient memorandum, the letters above de-

---

2. Some argument might be made that the failure of Ault and McNiece to answer Karlin's letters was a consent to the terms stated therein. However, only when there is a duty to answer may silence be treated as a consent. See, Albrecht Chemical Co. v. Anderson Trading Corp., 298 N.Y. 437, 84 N.E.2d 625 (1949); 1 Corbin, Contracts, § 72 (1963). In the context of this case there was no such duty and moreover, such an implied consent by silence would not satisfy the Statute of Frauds.

scribed sent by Karlin to Ault and Mc-Niece, the agreement of October 24, 1968 between Karlin and Weisinger, and the unsigned letter-proposal of October 28, 1968 from Weisinger to Avis, when considered and read together with the purchase agreement, constitute a memorandum sufficient to comply with the Statute. Neither of these contentions is valid.

■ In *Cohon* the seller in the contract of sale represented that he dealt with no person other than Cohon as a finder and he agreed to indemnify the buyer against any liability for a finder's commission or fee. The court read this agreement as an admission that Cohon had performed services and that when read together with the indemnification clause, this admission by implication established that the defendant was obligated to pay Cohon for services rendered. The instant case is quite different because, while both the seller and the buyer acknowledged not having dealt with any finder other than Karlin, the buyer, Ultra Dynamics, and not the seller, Avis, explicitly agreed to "pay in full the finder's fee payable to Mr. Karlin upon final consummation of this transaction." It is difficult, if not impossible, to imply from this statement an acknowledgment on the part of Avis that he had any obligation to pay Karlin a finder's fee. Indeed, the application of the *Cohon* principle to the present situation would establish, if anything, that Ultra Dynamics, rather than Avis, was obligated to pay Karlin "in full" for services rendered. And Ultra Dynamics in fact did pay Karlin a finder's fee on January 16, 1969, at which time Karlin not only signed a release of Ultra Dynamics but also acknowledged that the payment was "in full consideration" for acting as a finder in connection with the two purchase agreements.

■ In claiming a finder's fee from Industrial, Karlin relies on Bradkin v. Leverton, 26 N.Y.2d 192, 309 N.Y.S.2d 192, 257 N.E.2d 643 (1970), which we find totally inapplicable. In that case a corporation had employed the plaintiff under an agreement enforceable under the Statute of Frauds, to find corporations in need of financing. This the plaintiff did by arranging for the financing of Mauchly Associates, Inc. Defendant, an officer, director and stockholder of the corporation, intervened and arranged for private financing with Mauchly, and when sued interposed the Statute of Frauds as a defense to the plaintiff's claim for a finder's fee. In that case there was a valid written contract by the corporation to pay a finder's fee, which the officer "took over" when he substituted himself for his corporation by arranging for the private financing of Mauchly. Here there was no such contract by Industrial to pay a finder's fee and there was no "take over" by any officer of Industrial.

■ We come now to Karlin's second contention of combining and reading together all the writings, which claim is less convincing than his first. Karlin cites in support of his argument, Crabtree v. Elizabeth Arden Sales Corp., 305 N.Y. 48, 110 N.E.2d 551 (1953). That case involved an action for breach of an employment contract and the court did, in finding an enforceable agreement under the Statute of Frauds, combine together three writings, two of which had been signed by the defendant and one of which was unsigned. The two signed papers consisted of two payroll cards signed by officers of the defendant-corporation, indicating the salary agreed upon, and the unsigned document was prepared by the defendant's agent and contained a further term of the employment. The court held that a Statute of Frauds memorandum need not be in one document but is satisfied when signed documents pieced together with an unsigned paper all refer on their face to the same transaction and corroborate evidence of defendant's assent to the contents thereof. We find in this case no document signed by the defendants, indicating liability to Karlin for commissions, and the unsigned documents, which Karlin attempts to combine with the purchase agreements, were prepared

and signed, not by the defendants, but by Karlin. Letters which defendants did not sign cannot be combined with other unsigned documents to affix liability under the Statute of Frauds. Solin Lee Chu v. Ling Sun Chu, 9 A.D.2d 888, 193 N.Y.S.2d 859 (1959); *accord*, Brause v. Goldman, 10 A.D.2d 328, 199 N.Y.S.2d 606 (1960), affirmed, 9 N.Y.2d 620, 210 N.Y.S.2d 225, 172 N.E.2d 78 (1961). As stated in *Bradkin*, the Statute of Frauds is to protect against fraudulent dealings between the finder and his employer, "not between the finder and a third party, such as the defendant before us."

For the above reasons, the defendants' motion is hereby granted, the plaintiff's motion is hereby denied and the complaint is hereby dismissed. This is an order.