■ GOTTESMAN COMPANY, Appellant, v KEYSTONE ENTERPRISES, INC., et al., Respondents. [841 NYS2d 540]—

Order, Supreme Court, New York County (Shirley Werner Kornreich, J.), entered August 15, 2006, which, after a jury trial resulting in a verdict in favor of plaintiff against defendant Keystone Holdings, LLC (Holdings), granted Holdings' motion for judgment notwithstanding the verdict, set aside the verdict, and dismissed the complaint, unanimously reversed, on the law, with costs, the motion denied, and the verdict reinstated. The Clerk is directed to enter judgment in favor of plaintiff against Holdings in the amount of $870,000, with interest at the statutory rate from October 9, 2003, costs, and taxable disbursements.

Plaintiff is in the business of earning finder's fees by introducing clients to firms believed to be acquisition opportunities. Under the form of agreement plaintiff uses, it earns its fee when such an acquisition closes; the fee is calculated by applying a formula to the value of the transaction.

In September 2000, plaintiff entered into a finder's fee agreement with SilverZipper.com, Inc. (SilverZipper), a company then headed by Paul Palmeri. Thereafter, plaintiff introduced Palmeri to an acquisition prospect known as SML Sport. In December 2000, plaintiff entered into a substantially identical finder's fee agreement with Palmeri's new company, defendant Keystone Enterprises, Inc. (Enterprises), which took over the negotiations with SML Sport. In the end, Enterprises did not consummate a transaction with SML Sport.

In the fall of 2002, Palmeri contacted plaintiff to seek introductions to additional acquisition prospects. Palmeri testified that, on this occasion, he told plaintiff that he was acting on behalf of defendant Holdings, an entity different from Enterprises but having the same principal officers and investors. However, Robert Richardson, the representative of plaintiff with whom Palmeri spoke, testified that Palmeri made no mention of Holdings, leading Richards to believe that Enterprises (whose agreement with plaintiff was still in effect) was the prospective buyer. Shortly thereafter, without entering into a written agreement with Holdings, plaintiff introduced Palmeri to Royce Hosiery Mills. About a year later, in October 2003, Holdings' acquisition of Royce closed. The asset purchase agreement between Holdings and Royce acknowledges that plaintiff acted as a broker of the deal, but does not specify the amount of plaintiff's fee.

In this action, plaintiff seeks to recover from Holdings and Enterprises a fee for its services in the Royce transaction in accordance with the fee schedule in plaintiff's agreement with Enterprises. Applying the fee schedule in this agreement to the figure Holdings paid for Royce ($52 million) results in a fee of $1,020,000; because Holdings paid plaintiff $150,000 when the deal closed, plaintiff seeks damages of $870,000.[1] Enterprises denies any liability, and Holdings claims that its $150,000 payment fully discharged its obligation to plaintiff.

The action was tried before a jury. At the close of plaintiff's case, the complaint was dismissed as against Enterprises on the ground that (as the trial court later explained) plaintiff "fail[ed] to demonstrate Enterprises' involvement" in the Royce acquisi-

---

**1.** In pertinent part, the fee schedule in the Enterprises agreement is as follows:

"5% of $1 to $5,000,000

"plus 4% of $5,000,001 to $10,000,000

"plus 3% of $10,000,001 to $15,000,000

"plus 2% of $15,000,001 to $20,000,000

"plus 1% of any amount over $20,000,000."

tion. The case against Holdings was submitted to the jury on a theory of quantum meruit. A verdict for plaintiff in the full amount sought ($870,000) was returned. Thereafter, the trial court granted Holdings' motion for judgment notwithstanding the verdict, ruling that the Enterprises agreement (which had been received into evidence without objection) did not constitute evidence of the reasonable value of plaintiff's services and that none of the other evidence on which plaintiff relied was probative of such reasonable value. We now reverse.

As recognized by the trial court and conceded by Holdings, the applicable statute of frauds (General Obligations Law § 5-701 [a] [10]) was satisfied by the acknowledgment of plaintiff's performance of brokerage services in the asset purchase agreement between Holdings and Royce. Accordingly, plaintiff was entitled to prove and recover the reasonable value of its services on a theory of quantum meruit (*see Morris Cohon & Co. v Russell*, 23 NY2d 569 [1969]). Contrary to the trial court's view, however, the verdict as to the reasonable value of plaintiff's services was supported by sufficient evidence. Under the circumstances of this case, the jury was entitled to consider the fee schedule in plaintiff's agreement with Enterprises as evidence of the reasonable value of the similar finder's services plaintiff provided to Holdings, a related company (*see National Refund & Util. Servs., Inc. v Plummer Realty Corp.*, 22 AD3d 430, 431 [2005]; *United Bldg. Maintenance Assoc., Inc. v 510 Fifth Ave. LLC*, 18 AD3d 333 [2005]). Significantly, Palmeri, a principal of both Enterprises and Holdings, admitted at trial that it was not until *after* plaintiff had made the introduction to Royce— thereby completing its role as finder—that he told plaintiff that a new finder's fee agreement with Holdings was required and that, due to the size of the Royce deal, the fee schedule in the agreement with Enterprises was no longer acceptable. Moreover, since the Enterprises agreement was received into evidence without objection,[2] and no limiting instruction concerning the purposes for which it could be considered was requested or given, Holdings was not entitled to move to set aside the verdict on the ground that the Enterprises agreement did not constitute evidence of the reasonable value of plaintiff's services (*see Brown v Du Frey*, 1 NY2d 190, 196 [1956]; *Martin v Board of Educ. of Wappingers Cent. School Dist.*, 201 AD3d 711 [1994]; *Up-Front Indus. v U. S. Indus.*, 97 AD2d 354, 355 [1983], *affd*

---

**2.** Holdings withdrew its objection to the admission of the Enterprises agreement when the trial court granted its request for an instruction on spoliation of evidence, concerning certain internal e-mails plaintiff had not preserved.

63 NY2d 1004 [1984]; *Titlebaum v Loblaws, Inc.*, 75 AD2d 985 [1980]).[3]

Plaintiff also contends that the trial court erred in dismissing the complaint as against Enterprises, arguing that the Enterprises agreement, by its terms, obligated Enterprises to pay plaintiff a fee in the event "any related entity" consummated a transaction "in connection with [plaintiff's] efforts." Although plaintiff asks us to "find Keystone Enterprises liable," the only relief regarding Enterprises that we could grant plaintiff on this appeal is reinstatement of the complaint as against Enterprises and a remand for a new trial on the claim against that entity. Since plaintiff does not seek such relief, and we are in any event reinstating the verdict against Holdings, we do not address plaintiff's argument concerning its claim against Enterprises.

Finally, Holdings argues that, in the event we reverse the grant of its motion for judgment notwithstanding the verdict, a new trial should be ordered on the ground that plaintiff's counsel made "unfairly prejudicial" comments during summation. This argument is unavailing. To the extent Holdings' objections to opposing counsel's summation comments are preserved, we find that, in light of the trial court's curative instructions, the comments at issue were not sufficiently prejudicial, individually or collectively, to require a new trial. Concur—Tom, J.P., Friedman, Sullivan, Nardelli and Catterson, JJ.

**3.** We note that the trial evidence apparently would have supported a finding that Holdings "took over" Enterprises' finder's agreement with plaintiff by appropriating for itself the benefit of that agreement (*see Bradkin v Leverton*, 26 NY2d 192 [1970]). However, this was not the basis on which the case was submitted to the jury.