Chu v Kim (2024 NY Slip Op 51842(U))

[*1]

Chu v Kim

2024 NY Slip Op 51842(U)

Decided on December 19, 2024

City Court Of Poughkeepsie, Dutchess County

Mora, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on December 19, 2024
City Court of Poughkeepsie, Dutchess County

Carl S. Chu, Esq., Plaintiff,

against
Namhee Kim and Andy B. Cho, Defendants.

Docket No. CV-467-23

Arciero McMillan & Burgess, PC
Attorneys for Plaintiff
299 Windsor Highway
New Windsor, NY 12553
Song Law Firm
Attorneys for the Defendants
400 Kelby Street, 19th Flr.
Fort Lee, New Jersey 07024

Frank M. Mora, J.

Plaintiff is seeking to recover $10,465.00 for legal services rendered and unpaid by the defendants. On March 21, 2024, a trial in the instant matter was commenced and concluded on June 4, 2024. At the trial, Plaintiff testified on his own behalf, and Ms. Kim testified in defense of the claim. Various Exhibits were introduced as part of each parties' case. Plaintiff was represented by Arciero McMillan & Burgess, PC and Defendants were represented by Song Law Firm. At the conclusion of the trial, the parties were given the opportunity to submit post-trial memorandums. Both parties filed their post-trial memorandums on June 26, 2024. However, defendants' post-trial memorandum was initially rejected for failure to provide an affidavit of service. Defendants resubmitted their post-trial memorandum with an affidavit of service on July 23, 2024. Now, having duly deliberated upon the trial testimony of the witnesses, the evidence, and the post-trial memorandums, this Court finds and determines the matter as follows:
FINDINGS OF FACT
Plaintiff is a licensed attorney practicing law in the State of New York for more than thirty-five (35) years. He has practiced in the field of residential and commercial real estate during the life of his legal career. On February 5, 2021, the Defendants, Namhee Kim and Andy [*2]Cho—who are married to each other, retained Plaintiff for the purpose of purchasing residential real property located on 9 Karen Court, LaGrange, New York. The property's purchase price was $723,775.00. PLAINTIFF'S EXHIBIT 2. Although the Defendants are Korean, they communicated with Plaintiff exclusively in English and knew that Plaintiff did not speak Korean. Plaintiff communicated primarily with the Defendant, Ms. Namhee Kim, who is fluent in English, throughout the transaction. On February 5, 2021, Defendants signed the Retainer Agreement and hired Plaintiff to represent them in the purchase of the aforementioned property. PLAINTIFF'S EXHIBIT 1. The Agreement provided that Defendants would be charged a flat fee of $1,250.00 for basic and routine legal services relating to the contract of sale involving the aforesaid real property. The Retainer Agreement also provided that legal services rendered by Plaintiff that fell beyond ordinary legal services would be charged at an hourly rate of $350.00 per hour. PLAINTIFF'S EXHIBIT 1. It is this provision that forms the basis of the instant lawsuit. Specifically, the agreement provided as follows:
Please be informed that the basic legal fee for representation for a straight Purchase of Real Property in Dutchess County is $1,250.00. This fee covers: Review of the Contract of Sale, initial meeting with clients to review contract, preparation of changes to the contract and a rider (if necessary), preparation of estimated closing costs prior to closing, long distance charges for phone calls and faxes, the ordering of title and review of the title report, the ordering and review of survey as necessary, a reasonable number of telephone calls, and attendance at a closing in Dutchess County.
All other services including excessive telephone calls, emails, faxes and/or letters, and extensive discussions with seller's attorney, brokers, etc. are subject to charges based on an hourly rate of $350.00 per hour.
PLAINTIFF'S EXHIBIT 1.
Plaintiff asked the Defendants to read the Retainer Agreement in his presence and asked them if they had any questions concerning its terms. Having no questions, both defendants signed the Agreement. PLAINTIFF'S EXHIBIT 1.
On February 22, 2021, the Defendants entered into a purchase agreement for the property. They put down $88,265.00 as a deposit with the intention of financing the remaining 80% of the sale price ($579,020). As such, the contract contained a mortgage contingency clause that expired forty-five (45) days from the effective date of the contract — which was April 8, 2021. On June 24, 2022, the Seller's attorney for the property, Patrick Gartland, Esq., served Defendants with a "Closing Notice" pursuant to ¶11(a) of the contract, advising the property would be ready for closing by July 8, 2024. However, Plaintiff knew that the Defendants had not received a loan commitment letter from any of the five lenders they had applied to - even though the financing contingency expired more than a year prior. Plaintiff testified that the Defendants were having difficulty attaining a loan because they were self-employed and failed to provide the lenders with the requisite documentation needed to clear the loans. On or about June 24, 2022, Plaintiff began to render legal services for Defendants to facilitate the process of Defendants securing a loan because the contract provided for daily penalties in the amount of $300 per day that had already begun to accrue [PLAINTIFF'S EXHIBIT 2 ¶24(l)] and Plaintiff [*3]wanted to try to ensure that the Defendants did not lose their down payment ($88,265.00). On September 12, 2022, Mr. Gartland, Esq., served the Defendants with a "Time is of the Essence" notice and a closing date of September 27, 2022 — which letter provided that failure to close would be deemed a breach of contract and that the seller would retain the deposit, among other things. PLAINTIFF'S EXHIBIT 4. Knowing that the Seller was entitled to keep the deposit if the Defendants did not secure the loan in time, Plaintiff negotiated with Mr. Gartland a later closing date of October 14, 2022. During this period of time Plaintiff worked with Defendants and various mortgage companies to secure a loan so his clients could close on the property. Despite Plaintiff's success in being able to extend the closing date, the Defendants still incurred $29,400.00 in late penalties (98 days x $300 per day). PLAINTIFF'S EXHIBIT 2 ¶24(l). However, by staying in regular communication with Mr. Garltand, Esq. and prospective lenders for the Defendants via both phone and email, Plaintiff was able to secure the later closing date and prevent them from losing their deposit. In addition, Plaintiff further negotiated with Mr. Gartland, Esq. to reduce the late penalties the sellers were entitled to under the contract from $29,400.00 to $7,000.00. The Defendants paid this reduced penalty of $7,000.00 to the sellers in cash at the closing. As a result of the Defendants lack of participation in the loan process, however, Plaintiff contends that he was forced to participate in matters that were outside the scope of the flat fee retainer, and thus billed the Defendants at an hourly rate of $350.00 for work done outside the matters that fell outside the straight purchase fee.
The total amount due for the flat fee and hourly services together with disbursements totaled $21,630.00. Defendant paid $11,165.00 towards this amount on the date of the closing, leaving a balance due and owing of $10,465.00 — which forms the amount of the instant claim. Despite due demand, Defendants failed to pay Plaintiff the balance due and owing. Plaintiff sent Defendants a notice of their right to avail themselves of the New York State Attorney-Client Fee Dispute Resolution Program. Defendants did not avail themselves of any rights afforded to them under said program.
LEGAL ANALYSIS AND CONCLUSION
Here, according to the verified complaint, Plaintiff's claim rests on the legal theory of both an account stated and quantum meruit. An "account stated" is an agreement between the parties that the debt is valid and due. See Citibank v. Jones, 272 AD2d 815 (2000). In the case of an existing indebtedness, the agreement may be implied as well as express. Chisholm-Ryder Co., Inc., v. Sommer & Sommer, 70 AD2d 429 (4th Dept. 1979). A defendant's receipt and retention of Plaintiff's account without objecting within a reasonable time entitles plaintiff to judgment on the account stated, independent of the obligation. Citibank v. A.E. Caputo, 8 Misc 3d 131A (2d Dept. 2005); Werner v. Nelkin, 206 AD2d 422 (2d Dept. 1994); Chisholm-Ryder Co., Inc., v. Sommer & Sommer, 70 AD2d 429 (4th Dept. 1979). Plaintiff must establish with legally admissible evidence an agreement between the parties that a certain balance remains due from one to the other, and the promise of the former to pay the balance. Sherman Acquisition Ltd. Partnership v. Thomas, 8 Misc 3d 130A (2d Dept. 2005); see, Schutz v. Morette, 146 NY 137 (1895). In order to establish a prima facie cause of action for an account stated, Plaintiff must demonstrate that Plaintiff provided the Defendants with a statement of account with an unpaid balance, and that Defendants retained such statements for an unreasonable period of time without objecting thereto. Discover Bank v. Williamson, 14 Misc 3d 136A (2d Dept. 2007); Fink, Weinberger, Fredman, Berman & Lowell v. Petrides, 80 AD2d 781 (1st Dept. 1981), appeal dismissed 53 NY2d 1028 (law firm's itemized bill received and held by client without [*4]objection for a lengthy period of time gave rise to an actionable account stated). Silence is deemed acquiescence and warrants enforcement of the implied agreement to pay. Chisholm-Ryder Co., Inc., supra at 431 citing Rodkinson v. Haecker, 248 NY 480; Steingart Assoc. v. Sandler, 28 AD2d 801 (3d Dept. 1967). Moreover, an agreement may also be implied if the debtor makes partial payment as this is considered acknowledgment of the correctness of the account. Chisholm-Ryder Co., Inc., supra at 431 citing Parker Chapin Flattau & Klimpl v. Daelen Corp., 59 AD2d 375 (1st Dept. 1977); Rik Shaw Assoc. v. Bronzini Shops, 22 AD2d 769 (1st Dept. 1964); see, also, Milstein v. Montefiore Club of Buffalo, 47 AD2d 805, 806 (4th Dept. 1975).
Here, the cost of legal services were detailed in the retainer agreement signed by the Defendants on February 5, 2021. PLAINTIFF'S EXHIBIT 1. The understanding that these fees were agreed upon and authorized by the Defendants was acknowledged in person during a meeting with the Plaintiff. This signed retainer agreement specifically details that the hourly rate for legal representation would be charged for all matters that fell outside the standard work involved with closing. This work was detailed in Plaintiff's testimony which was corroborated by Plaintiff's phone log records showing approximately one hundred twenty-nine (129) phone calls involving this real estate transaction over approximately ten (10) weeks. PLAINTIFF'S EXHIBIT 7. Moreover, on October 13, 2024, the day before the closing, Plaintiff emailed Defendants a final bill totaling $22,330.00. PLAINTIFF'S EXHIBIT 6 (Invoice I). Following a conversation between the parties and Defendants disputing certain charges, Plaintiff agreed to issue a courtesy discount and reduced the bill to $21,630.00, PLAINTIFF'S EXHIBIT 6 (Invoice II). At the closing, Defendants acknowledged the correctness of the account when they paid $11,165.00. Via invoice dated October 24, 2022, Plaintiff emailed the balance due totaling $10,465.00, and Defendant acquiesced to this amount by their silence. On November 28, 2022, Plaintiff emailed the Defendants the invoice again noting that their invoice was long past due - again Defendants did not respond and thus acquiesced by their silence. Fink, Weinberger, Fredman, Berman & Lowell v. Petrides, supra; Chisholm-Ryder Co., Inc., supra at 431 citing Rodkinson v. Haecker, 248 NY 480; Steingart Assoc. v. Sandler, 28 AD2d 801 (3d Dept. 1967). 
The Plaintiff has established an "account stated" in the instant matter that he rendered professional services to the Defendants, invoiced them for services rendered, provided them with notice of their right to arbitrate, and properly demanded payment from the Defendants. Plaintiff provided a courtesy discount after the Defendants questioned his bill, and on October 14, 2022, Defendants acknowledged services rendered when they paid Plaintiff $11,165.00 on the account at the closing and failed to dispute the balance due and owing within a reasonable time, independent of the obligation. Citibank v. A.E. Caputo, supra; Werner v. Nelkin, supra.
It is only after the Plaintiff filed the instant lawsuit — which was long after the Defendants were invoiced - that Defendants disputed the balance. Importantly, Defendants do not dispute the Plaintiffs' claim that the work was done, nor the amount outstanding. Instead, it is at the trial—for the first time—that Defendants dispute the claim on the grounds that the Plaintiff failed to comply with the regulations set forth in 22 N.Y.C.R.R. § 1210, to wit: that periodic statements were not provided to them. However, there is no express penalty for noncompliance with failure to provide periodic statements as set forth in the Statement of Client's Rights. 22 N.Y.C.R.R. §1210.1.
Notably, Defendants only secured a loan because of Plaintiff's work on ensuring they obtained financing and closed on the property. Again, it is undisputed that Plaintiff performed [*5]the services rendered. It is undisputed that the retainer agreement Defendants signed details that work performed by Plaintiff outside of the "straight Purchase of Real Property" would be billed at an hourly rate of $350 per hour. Defendants did not complain about the quality of services Plaintiff provided, nor did they dispute the extraordinary efforts Plaintiff undertook to close on the property. Similarly, Defendants do not dispute that Plaintiff took extraordinary efforts to help them secure a loan—something that was their responsibility—and which was work performed by Plaintiff that prevented Defendants from losing their deposit. Moreover, there was no testimony that Defendants even believed the work performed by Plaintiff was included in the $1,250.00 flat fee. Likewise, there was no evidence presented that Defendants ever objected to the Plaintiff doing the work he undertook. At no time did Defendants dispute these charges in writing, rather they simply ignored the bill until Plaintiff commenced the instant lawsuit on April 17, 2023, and only now dispute the outstanding balance. Given the evidence presented, this Court finds that the Plaintiff provided legal services that fell outside the scope of the flat fee for which he was entitled to bill on an hourly basis, including: It was Plaintiff—not Defendants—that ensured a loan was secured which, in turn, protected Defendants from losing their deposit; and it was Plaintiff who negotiated, at length with Mr. Gartland to reduce Defendants' late fees by over 75% (from $29,500 to $7,000) that Defendants incurred. These facts, together with the receipt and retention of the Plaintiff's bill without objection within a reasonable time, gives rise to an actionable claim of an account stated that Plaintiff has established by a preponderance of the evidence. Gassman & Keidel, supra. 
Based upon the foregoing, this Court does not need to reach the issue of quantum meruit, but nonetheless finds that the Plaintiff has sufficiently set forth facts by a preponderance of the evidence that Plaintiff is entitled to recover the value of the work he performed under the contract on the principle of quantum meruit as well. Quantum meruit is a legal obligation imposed in order to prevent a party's unjust enrichment. Tesser v. Allboro Equip. Co., 302 AD2d 589 (2d Dept. 2003). Its purpose is to prevent unjust enrichment of one party and render as much as deserved to the other party. Bradkin v. Leverton, 26 NY2d 192 (1970); Gromback Productions, Inc. v. Waring, 293 NY 609 (1944). To state a cause of action in quantum meruit, a plaintiff must establish 1) the performance of services in good faith; 2) acceptance of the services by the person to whom they are rendered; 3) the expectation of compensation therefor, and 4) the reasonable value of the services allegedly rendered. Tesser v. Allboro Equip. Co., supra. As detailed hereinabove, Plaintiff has establish each element for a cause of action in quantum meruit as well.
THEREFORE, based upon all of the foregoing, it is hereby
ORDERED, that judgment be entered in favor of the plaintiff in the amount of TEN THOUSAND FOUR HUNDRED SIXTY-FIVE DOLLARS AND ZERO CENTS ($10,465.00) plus interest, costs, and disbursements.
SO ORDERED.
Dated: December 19, 2024
Poughkeepsie, New York
FRANK M. MORA
CITY COURT JUDGE