Hussein v Kenda (2025 NY Slip Op 50748(U))

[*1]

Hussein v Kenda

2025 NY Slip Op 50748(U)

Decided on May 8, 2025

City Court Of Buffalo, Erie County

Town, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on May 8, 2025
City Court of Buffalo, Erie County

Hassan Hussein, Plaintiff,

against
Mikhail Kenda D/B/A/ MK CAR SALES, Defendant.

Index No. SC-000093-25/BU

Hassan Hussain, Pro Se and Vyacheslav Kenda, Pro Se

Rebecca L. Town, J.

In the instant case, Plaintiff Hassan Hussein brings an action against Mikhail Kenda, doing business as MK Car Sales, for damages amounting to $5,000. Below constitutes the Court's findings of fact and legal conclusions.
FINDINGS OF FACT
The record before this Court, though modest in volume, is not deficient in the gravity of its implications. It concerns a dispute over the rendering, or more precisely, the taking, of automotive repair services. The herein plaintiff, Hassan Hussain, appearing pro se, asserts that he paid $2,400 United States Dollars in cash to a person identified only as "Mike," operating from the premises of MK Car Sales, for the performance of electrical repairs upon a vehicle that had become nonfunctional due to a disconnected relay wire.
The plaintiff's son, a student of automotive mechanics at Erie Community College, testified to the mechanical defect that rendered the vehicle inoperable. Though not qualified as an expert, his testimony as to the location and nature of the fault was both coherent and consistent. He arranged, through instructions contained in text messages presented to the Court, for the vehicle to be towed to MK Car Sales; a location whose business card was also introduced into evidence.
Upon arrival at that address, the plaintiff and his son were greeted by the aforementioned "Mike," to whom they paid $2,400 in cash. The plaintiff submitted a withdrawal slip from M&T Bank corroborating the cash payment on or about that time. Plaintiff testified that he requested a receipt, but was told, astonishingly, that one could only be obtained upon the payment of an additional $280. No receipt was provided.
The vehicle was returned to the plaintiff in an apparently functional state. However, three days later, it caught fire. This Court does not find the evidence sufficient to trace the combustion to any specific defect or workmanship attributable to the defendant. The cause of the fire remains shrouded in the uncertainty that often characterizes matters of mechanical degradation [*2]absent expert testimony. The named defendant, Mikhail Kenda, failed to appear. In his stead appeared one Vyacheslav Kenda, who styled himself as a manager authorized to represent the business. Vyacheslav Kenda testified that he searched the company's records and found no documentation of any transaction involving the plaintiff's vehicle. When asked whether he had inquired of all employees as to their knowledge of the event, he candidly conceded that he had not. He acknowledged that the plaintiff's vehicle had been on the lot of MK Car Sales. He did not dispute that the plaintiff came to retrieve it, nor that work may have been done upon it. In essence, the defense was not a rebuttal but a profession of ignorance, cloaked in the assumption that the absence of internal paperwork amounted to an absence of liability. Such is the evidentiary foundation which this matter stands.
DISCUSSION
The law does not, and cannot, stand inert where gain is wrested from trust under the guise of informality. That a transaction should lack a paper trail does not render it invisible to equity. On the contrary, it is in such shadows that equity's light must burn most brightly. The doctrine of unjust enrichment exists precisely for those occasions when the formality of contract yields to the reality of conduct. New York courts are not bound to close their eyes where the ledge is silent, if the conscience of the facts speaks unequivocally. Here, the plaintiff gave money. The defendant received it. What followed, without question, was obfuscation; no invoice, no receipt, and no candid explanation. Yet even silence has its weight when it comes from the party who alone possesses the means to clarify.
In the instant matter, the defendant's silence is not the silence of innocence but the muteness of design. A man cannot take cash in hand, refuse a receipt, and then retreat into the citadel of poor bookkeeping to disavow the hand that fed him. The law owes no protection to those who trade on ambiguity to evade responsibility. Where money changes hands, where labor is presumed done, and where the record is left blank by the deliberate act of one party, the law must not permit that party to say, "Because you trusted me, you have no claim."
As set forth more fully below, this Court traces this logic from settled principle to practical consequence. This Court finds, in order: (i) that New York law recognizes unjust enrichment even in the absence of privity; (ii) that testimonial and circumstantial evidence may establish such enrichment where written proof is deliberately withheld; (iii) that enrichment may be through apparent agents whose acts go unrepudiated; and (iv) that refusal to document a transaction, when so conditioned upon further payment, evinces not only bad faith, but calculated concealment. Here, it is not one writes down that binds, it is what one takes and declines to return.
I.
The cause of action for unjust enrichment lies not in contract, but in equity. It is a doctrine grounded in the enduring principle that one shall not be permitted to profit unjustly at another's expense. As the Court of Appeals has stated, the essential inquiry is not whether the defendant committed a wrong, but whether the circumstances are such that, as between the two parties, it is unjust for one to retain what the other has lost (Bradkin v Leverton, 26 NY2d 192, 197 [1970]).
The elements of unjust enrichment under New York law are well settled. To prevail, a [*3]plaintiff must show (i) that the defendant was enriched; (ii) that the enrichment was at the plaintiff's expense; and (iii) that equity and good conscience militate against permitting the defendant to retain the benefit (Georgia Malone & Co., Inc. v Rieder, 19 NY3d 511, 516 [2012]; Mandarin Trading Ltd. v Wildenstein, 16 NY3d 173, 182 [2011]). The absence of a formal agreement is no bar to recovery. The doctrine is "available when one party possesses money or property that rightly belongs to another" (Simonds v Simonds, 45 NY2d 233, 242 [1978] (citing Miller v Schloss, 218 NY 400, 407 [1916]). Its reach extends to situations where there is no contract, no invoice, and no signed receipt, provided the elements are met.
The law's refusal to enforce an enrichment unjustly obtained is not the enforcement of a promise, but the redress of conscience. And if conscience is to be our guide, then it must be allowed to speak loudest where the facts are cloaked in silence, and the documentary record is as deliberately blank as the defendant's denial is shallow. Unjust enrichment is not blind to informal dealings; it is, in many respects, their final court of appeal.
II.
There exists in modern commerce a class of transactions which, though casual in form, are deeply consequential in effect. The rise of informal, undocumented dealings—particularly in small business, automotive, and labor-based settings poses no small challenge to the courts. Yet equity's task is not to privilege the party best armed with a pen, but to ensure that enrichment does not go unchecked where evidence of value rendered is credible and uncontradicted. Here, the plaintiff's claim arises not from a written contract, but from a cash exchange for services at a commercial garage. There is no invoice, no receipt, no signature. Yet these absences, in and of themselves, do not defeat recovery. A formal agreement is not a predicate to an action in unjust enrichment, so long as the plaintiff can demonstrate the elements through "circumstantial or inferential proof. In the present case, the plaintiff produced: (i) a $2,400 bank withdrawal receipt proximate in time to the alleged transaction; (ii) text messages directing a tow to the precise location of the defendant's business; (iii) a credible, firsthand account by the plaintiff's son—an automotive student, who coordinated the towing and spoke with the individual identified as "Mike"; (iv) a business card matching the address and name of the shop, and, (v) the uncontroverted fact that the vehicle, while inoperable upon arrival, became drivable after remaining at the garage.
This body of evidence, though lacking in formality, is rich in factual texture. It is the very kind of evidentiary mosaic that courts have recognized as sufficient where a paper trail is deliberately left unpaved. Here, unjust enrichment does not require direct evidence of a benefit. Reasonable inferences may suffice where the enrichment is otherwise apparent. To say that a party may escape liability merely by refusing to provide documentation would invite abuse of precisely the kind New York law exists to prevent. Indeed, it would transform informality into immunity. Such a rule would reward concealment and punish trust. It would take basic legal values and invert them at the expense of those least equipped to defend themselves in transactions reliant upon good faith.
Accordingly, this Court joins those that have recognized that unjust enrichment may lie even where the transaction is undocumented, provided the plaintiff offers credible testimony, corroborating circumstances, and the defendant offers no meaningful rebuttal. Equity does not require that one write down the facts of a transaction before those facts may become legally [*4]cognizable.
III.
The law often operates in fog, for those who profit from ambiguity seldom provide a map. In such circumstances, the law looks not to titles and filings, but to conduct and the reasonable appearances it creates. Where a party holds out a place of business to the public, receives customers, accepts their property, and permits payment to be exchanged on its premises, the legal obligations of that business cannot be escaped merely because the individual who took the payment lacks a badge or a W-2 form.
This Court takes it as axiomatic that a principal may be liable in unjust enrichment for benefits conferred through an agent acting with apparent authority, even where the principal denies knowledge of the specific transaction (see Restatement (Third) of Agency § 2.03). Apparent authority arises "when a third party reasonably believes the actor has authority to act on behalf of the principal and that belief is traceable to the principal's manifestations" (Hallock v State of New York, 64 NY2d 224, 231 [1984]).
In the case at bar, the plaintiff delivered his vehicle to a commercial garage bearing the name MK Car Sales, located at the address on the business card he received. He spoke with a man identifying himself as "Mike," who accepted $2,400 in cash to perform electrical repairs. The vehicle remained on the premises and was later retrieved in drivable condition. No one denied that the business existed. No one denied that the vehicle was towed there. And most significantly, no one denied that "Mike" was present and operating on behalf of the shop.
The defendant's only effort to disavow liability came through a surrogate, Vyacheslav Kenda, who admitted he had not spoken with all shop employees before testifying that no work had been performed. Such a partial inquiry into the facts, when fuller knowledge is readily accessible, undermines rather than supports the defense. Silence may be excused by ignorance; but where ignorance is elective, it becomes strategy. Moreover, the business retained possession of the vehicle, never notified the plaintiff of any irregularity in payment or authorization, and never produced any employee to disclaim receipt of the funds. The shop cloaked itself in the indicia of commercial legitimacy, including premises, signage, business cards, and apparent agents, and cannot now divest itself of those trappings when held to account for the enrichment they facilitated. To hold otherwise would be to invite a species of commercial alchemy whereby entities appear for the purpose of taking payment but vanish when the obligation to account arises. That this Court will not permit.
Thus, this Court holds that where a party knowingly operates a commercial space in which payment is accepted by apparent agents, and where the recipient retains the benefit of that payment or the product of the transaction, unjust enrichment may lie even in the absence of formal employment or direct evidence of agency. What matters is that the benefit accrued to the business, and that the plaintiff's belief in the agent's authority was reasonable and uncontradicted.
IV.
There are silences that arise from oversight, and there are silences that speak volumes. When a business refuses to document a transaction unless conditioned upon additional payment, [*5]it does not merely fail to memorialize the exchange, it affirms, by its very refusal, that concealment is an intended feature of the transaction. Where equity is concerned, such conduct does not immunize the party who profits from it; rather, it marks the enrichment as all the more unjust.
The facts here present precisely such a circumstance. After paying $2,400 in cash for electrical repairs, the plaintiff requested a receipt. He was told, on unrefuted testimony, that a receipt would only be provided if he paid an additional $280. This demand was not disputed. No explanation was offered by the defense. No denial was made by any witness with personal knowledge of the interaction. The evidence stands unrebutted. Such behavior is not merely irregular, it is a red flag of bad faith. A receipt is not a gratuity; it is a token of accountability. The refusal to provide one, particularly in a commercial context, suggests an effort to elude documentation, evade liability, and obscure the trail of money and service. It is the very conduct that equity scrutinizes most closely, for it bespeaks an intention not to transact openly, but to profit in darkness.
Courts have long held that where a party obstructs recordkeeping or refuses documentation as a condition of payment, such conduct may be considered probative of inequitable intent (see e.g. United States v Dixon, 658 F2d 181, 193 [3d Cir 1981]). Although unjust enrichment is not a punitive doctrine, it is a responsive one: it responds to inequity by ordering restitution, and it is particularly attuned to the means by which enrichment is concealed. The absence of a receipt here does not weaken the plaintiff's claim; it strengthens it, for it shows that the defendant not only took the plaintiff's money, but took steps to ensure that no record of the taking could be produced. Moreover, refusal to issue receipts weighs heavily in support of inference of concealment;
Thus, this Court holds that where a business refuses to issue a receipt unless conditioned upon additional payment, that refusal may serve as circumstantial evidence of intentional concealment, supporting a finding of unjust enrichment where other indicia, such as credible testimony and bank records, point to enrichment.The law does not turn its head to the methods by which some seek to erase their footprints. The law walks where the ledgers are blank.
V.
The law does not draw its strength from formality alone. It draws it also from conscience, from the recognition that equity must stand guard where documents fail, and that silence, when cultivated, may speak more than words. In this case, the plaintiff gave money. The business took it. No receipt was issued. No denial was made. No record was kept. And yet the plaintiff's vehicle was returned, if only briefly, repaired enough to run, before it gave way to failure.
The Court does not find that the fire which later consumed the vehicle was shown to be caused by the defendant's work, and makes no finding of negligence. But that issue lies beyond the province of unjust enrichment, which is not a tort theory, but an equitable one. The question here is not whether the defendant performed poorly. The question is whether it is just that the defendant retain what was paid in reliance upon a transaction it now declines to acknowledge. On the record before the Court, there can be only one answer.
The defendant was enriched. That enrichment was at the plaintiff's expense. And the circumstances—documentary silence, refusal to issue a receipt, and the acceptance of payment through an agent presented to the world as legitimate—render that enrichment unjust.
CONCLUSION
Accordingly, it is
ORDERED, that judgment be entered in favor of the plaintiff, Hassan Hussain, in the amount of $2,400.
E N T E R
Dated: May 8, 2025
Buffalo, New York
Hon. Rebecca L. Town